3-16-0124 People of the State of Illinois, Appalachia, by Mark Rostal, versus Xavier Crump, Appellant, by James Wozniak May it please the Court, Counsel, Your Honors, I am James Wozniak, Counsel for Appellant Xavier Crump On May 10, 2015, Xavier Crump was stopped on the side of Interstate 80 and 55 in a parked vehicle by Trooper Frank of the Illinois State Police. Trooper Frank ultimately arrested Mr. Crump for driving under the influence. It really wasn't stopped, he was approached by the officer? Correct, there is a video. In that car? Yes, Your Honor, it was on the entrance ramp from 55 southbound to Interstate 80 east and Mr. Crump was asleep in the vehicle as Trooper Frank came up on it. Mr. Crump was ultimately arrested for driving under the influence of alcohol taken to a state police facility where he submitted a breath test. He was charged with under the influence of alcohol and having his blood alcohol content of .08 or higher. He proceeded to a bench trial. At that bench trial, the only state's witness was Trooper Frank who testified that he administered a breath test to Mr. Crump. And the test result was .131. Ultimately at that bench trial, Mr. Crump was found not guilty of driving under the influence of alcohol, but he was found guilty by the court of having a blood alcohol content of .08 or higher. To introduce the breath test result, the state needed to lay the foundation for that breath test result. There's certain requirements. What we're talking about here is the third requirement under People v. Orth that the machine was tested regularly for accuracy and was working properly. Administrative code further states that a breath machine in Illinois has to be tested every 62 days. What was the evidence? We know pretty well the facts here. So what was the evidence that this was accurately tested, certified, etc. under that third factor? Trooper Frank did not, the only live witness, did not testify anything about the accuracy. He said he did not perform any of the accuracy tests. He didn't know how the accuracy documents were made. The evidence that was presented by the state was a series of documents. One was a single-page letter from a Nancy Esom, who's the keeper of records for the Illinois State Police Academy, and then there were several documents that had dates on them. Two of them, one was May 1, 2015, so nine days before Mr. Crump's test. The other was June 5, 2015, after Mr. Crump's test. And those documents are titled INTOX-EC-IR-2 Scheduled Certification. And then there was a document that had that same INTOX-ECIR. Where do we find those documents? They're part of the record, because they were ultimately... Does it just rest upon documentation and the sufficiency thereof? Yes, Your Honor. Do you know that you're permitted to attach those documents to your grades? I put them as part of the appendix, but they're part of the record. There are three judges here, there's one director. And, you know, the question of accessibility of the record is difficult. I understand, Your Honor. And for completeness on both parties, from here on out, the more information you do, you're permitted to do that, which helps a lot of us. I appreciate that, Your Honor. Thank you. Those documents are also a police log from February 2, 2015, to June 11, 2015. What the state was trying to show is that those documents, in themselves and what the state argues in their brief, show that the machine was working properly and accurate and was tested 62 days prior to Mr. Crump's test and 62 days after Mr. Crump's test. The problem is those documents in themselves, what we argue, don't show that the machine was tested accurately. It's raw data, and there's no interpretation of that data. It's very similar. The facts are very, very similar to the First District case with People v. Smith that is cited in my brief. Similar in Smith, it was just a police officer who administered a test. Documents were presented by the state police to certify that the machine was working accurately, and what the court found was that it was raw data and no interpretation of that data. And I think the important things to talk about are what the state talks about in their brief is that the May 1, 2015 document and the June 5, 2015 document, which is this certification check document with the title, contains language, as the state says in their brief, the standard dry gas target. It does contain the words dry gas target. Whether or not that's a standard or not is unknown in the record of the testimony, and what a dry gas target even is is unknown by the documents of the testimony itself. They also contain a series of letters like BLK, CHK, numbers .000, .079, with no explanation as to what these letters or what these numbers mean in relation to the accuracy test. I think BLK means blank and CHK means check. It could be assumed that, but it's not obvious. It could be black. It could be CHK. I don't know. I mean, the problem with this case is there's a lot of assumptions by the state. Those assumptions were adopted by the trial judge that these documents show that this machine was working properly. We don't know also from the documents of the testimony whether or not this was, as the state wants to argue, this was the conclusory final accuracy test. Maybe this was one in a series of tests that ultimately show that this machine is working accurately. Maybe it's a test wholly unrelated to the final accuracy determination. The documents themselves do not interpret the data. So what you're asking for is an affidavit, perhaps, if it's documentary, conclusive conclusion that this machine is accurate, has been tested, and it's accurate. I think the easiest thing would have been for the state and then the best course of action would have been for the state to actually call in the person that certified the machines for live testimony. Do you think that's necessary in every DUI to actually come and testify? I don't think it's necessary. I think that's probably the best course. I think what the Smith Court is saying, and what we're asking for, is that if the state police are going to submit documentation saying that this machine is working properly, it has to go further than what the documents here state, and then the Smith Court. There has to be a conclusion. You're saying that affidavit, the miscibility of that affidavit would be sufficient? If there was a conclusion that, based on the foregoing, whatever, whatever, that this machine is considered to be accurate? Yes, Your Honor, I believe potentially that would be appropriate. For instance, let's take that dry gas target language. Imagine a report where the state police are actually saying, here's what a dry gas target is, here's what it means to the accuracy of the test, here's why it ended up on these documents, and what this means, and what does CHK stand for, what does BLK stand for, and that given all this information, this is why the machine was working properly on May 10, 2015. What's the standard for the admission of the permissibility of evidence, the judge's decision whether to grant or deny a motion to eliminate the bar evidence? Well, we're asking for the standard review here is a de novo standard review. The state's asking for abuse of discretion. The Smith Court said it didn't matter. They're going to reach the same conclusion. This is really an interpretation of the law by the trial court, whether or not these documents, the administrative code requires, and people of the ORF, requires that the machine be accurate, be the proper type of machine that's allowed in Illinois. So I think what the court has to do is look at the documents, say, do these documents meet these foundational requirements, then ultimately bring in the breath test. I think whatever standard review that this court uses should come to the same conclusion, that the documents in and of themselves did not show that the machine was tested regularly and accurately working on May 10, 2015 when Mr. Crone submitted the test. And those things that says test successful, that wouldn't draw you to conclude that the machine was accurate? Well, that's what the states argued. The words check, pass, success means that the machine was accurate. But, again, this is a machine that has, I'm assuming, several components to it. It has a straw breathing device that they have to blow into so it has to register air. It does, I'm sure, some chemical analysis. There could be a series of tests that could be performed on the machine. So maybe this is the documents to a test testing for accuracy, but it doesn't mean that it's the final conclusion that the machine was ultimately accurate. And there's nothing in the documents that says this is the one test that we do on this machine and this is what we do and here's what the results are and so this test is accurate. There's nothing explicitly in the documents that were submitted by the state police that says that and there was no testimony at all in the trial court saying that this machine was accurate on May 10th and that these documents say that this is the test that shows that this machine was accurate on May 10th. What is successful or successful? It could be, success could be, what if the first test is whether or not the machine is drawing electrical power because it's an electrical machine. So they do a test and, okay, it's a success. It's drawing electrical power. That doesn't mean that the test is ultimately accurate for testing blood alcohol content for a person because maybe there's a second test is whether or not the air intake is working properly or the calculation part of the machine is working properly or the chemical test itself is working properly. Well, I have a question. You're saying to say that it was accurate on this date certain. What was the date certain? What does that refer to? May 10th is when Mr. Crump took the breath test. Now how could that be done because was it tested on May 10th? It was not, Your Honor. Okay, so really I think it's a mistake that anybody can certify that this was an accurate machine on the day that it was administered. The code at Illinois... I mean, logically. The only way you could do that is to have it tested at near close to five minutes perhaps of when it was administered and the result was given. Agreed, Your Honor. They could test it before, actually before every test is given. We know that's not practical and that's not going to happen. And I think the administrative code and the legislature understands that that's not practical but what they have built in is that they must be tested for accuracy every 62 days. So all the state had to show was that within 62 days before Mr. Crump's test and 62 days after, this machine was tested for accuracy. If it was accurate within that time period, then they could lay it to rest. So they had to show that it was accurate within 62 days after or before? I believe the way I would... I would say it's... I would say that it has to be both but if one of them is not done, then... Why does it have to be both? The... well... Why is it not sufficient that on May 10th, okay, within 62 days of administering that test, there was an accuracy examination and it was... and it passed? I think what it goes to is your last question, Judge, is that on May 10th, if I've taken the test... Right. ...and you've tested it now after within the 62 days, there's no guarantee that the machine was working properly on the day I took the test. It could have been not working properly, somehow started to work properly and then 62 days later you test it. When you test it, it's working properly. But that doesn't... I think what the administrative code is trying to do is that we're going to do a window before and after the test. So if your test falls within that window, it's going to be accurate because we tested it before and after. So it does say before and after in the administrative code? It just says within 62 days. No, it doesn't say before and after. Correct. It says within 62 days. Within 62 days. The Smith court's determination was the test prior to Mr. Smith taking the test. The documentation did not show that the machine was accurate at that point. Let's say May 10th was the 62nd day. I'm moving back. The test of accuracy was made back. So the 62nd day is May 10th and it's administered. Is that sufficient? It's an interesting question. It's not the facts of this case. Yeah, but it gets to the same concept of what you're trying to say. I understand. The issue with the facts of this case is that no documentation at all at any point in time before Mr. Crump gives tests shows that the machine was ever accurate is what we're arguing. That's the last two minutes. All it was was raw data without a conclusion or interpretation done by someone more qualified to make the conclusion of accuracy. Correct. And I think one of the issues we have, too, is the logbook. So this logbook is maintained at the state police facility. Mr. Crump's test is recorded in there by Trooper Frank. This June 5th supposed certification afterwards, there is a notification logbook for June 5th, and there's a stamp that says certified accurate. There is nothing in the law for any test on May 1st. So the other documentation the state police submitted with this May 1st certification check, in the logbook, there is no reference to any test whatsoever on May 1st or any entry whatsoever. What the state argued is... Is there any in the logbook from May 10th? What was the date? May 10th was his test, yes. Okay. That 62 days going back to May 10th in the logbook that there's a notation like there was in June certified. No. And the logbook begins with February 2nd. There's a larger than 62 day time frame before his test on May 10th. The state argued... Was there a document from May 1st? There was a document titled certification check from May 1st. And this became... They said test status fixed that. Correct. And this document with the state prosecutor at the trial argued said why it's not in the logbook because it was a remote test that the state here has adopted that in its briefs. But there's no testimony whatsoever about this test being done remotely or where it was ever done. There's nothing in the documents itself that says that the test was done remotely. It's purely... But it identifies this machine for which reference it's this machine.  Correct. So that the same... Correct. The May 1st, May 10th, and June 5th documents all reference the same machine and serial number. Is there any other questions from the court? Your Honors, we ask that this court reverse the court's finding of guilty vacate defendant's sentence and remand this matter for the proceeding. Thank you. Thank you, Counsel. Counsel. Thank you. May it please the court. Counsel. Judge Tolbert, you know, first address your concerns about the record. In this case, there was an electronic record and all the evidence is in that record. But for future reference... It would just help for portability. I understand. Thank you. Regarding the standard review, Justice Schmidt, we cited the Torelli case, rather, in our brief for the premise that foundation and admission of evidence is under the abuse of discretion standard of review. And this is not a case of an interpretation of statute that would necessitate de novo review. But under either standard, we believe that this evidence was sufficient to demonstrate... Yeah, but you can still attack on appeal the sufficiency of the evidence. Well, certainly. Right. So... Absolutely. Yeah. That's why we're here today. Right. Yeah. Defendant, of course, was convicted of DUI. Well, his blood alcohol was over 0.08. The only challenge is that the machine was a model approved by the Department of State Police and it was tested regularly for accuracy and it was working properly at the time of the test. The administrative code requires a breath analysis technician or automated system to perform accuracy checks at least once every 62 days. The accuracy test results are to be recorded in the machine's logbook or internal memory or in a central repository. And the accuracy checks performed remotely will not be entered in the on-site logbook. That's under administrative code 20, administrative code 1286.230A. Defendant claims no evidence shows the breathalyzer used in this case was certified accurate. Defendant acknowledged in his main brief that the verified certification in the company documentation may be admitted under the business record exception to hearsay, but he asserted that the people did not establish the foundation to admit the verified certification as a business record. In his reply brief, defendant claims without citation to any authority that the official seal on the verified certification has no bearing on the circumstances of the preparation of the documents introduced into evidence. But defendant's claim has no merit because under rules of evidence 9021 and 90211, the verified certification was self-authenticating as it bore an official seal. It was a record of a regularly conducted activity and the keeper of records verified or provided rather is sworn verification that the contents of the verified certification are true and correct. Rule 902 requires the record to be admissible under rule of evidence 8036 regarding a regularly conducted activity and rule 803 references rule 90211. The verified certification stated it was a record of the accuracy checks on May 1st and June 5th, 2015 on the intoxilizer machine at issue and it was transmitted by the keeper of records for the Illinois State Police Academy alcohol and substance testing section. In compliance with rule 90211, the verified certification lists defendant's name, identity, the Wolf County case number, the machine used and its serial number and it referenced the term accuracy checks four different times. The verified certification tracked the exact language of rule 90211 where it stated the accuracy checks were made at or near the time of the occurrence of the matter set forth. The accuracy checks were kept in the course of the regularly conducted activity and the accuracy So it verifies that accuracy checks were performed. Yes, Your Honor. But that leaves still begging the question, what were the results of those and would that lead to the conclusion that they would be accurate in measuring blood alcohol concentration? Well, that's where the documents attached to the verified certification come into play. And we don't have the May 1st result in the log book. The prosecutor in this case represented that on May 1st the test had been remotely performed and the defense counsel did not object to this representation at that time. What does that mean? I'm just curious. Remotely performed? Is it like a computer? There could be a breath analysis technician that at the state police headquarters or some other remote location can actually test the machine electronically. Okay. And some machines are set up to automatically self-test also. And those tests would not be in the log itself. The on-site automatic test would probably be stored in the machine itself but the remote test would be in the repository in this case. And the breathalyzer log that was on site for this particular machine begins on February 12th, 2015. It contains only one entry on June 5th, 2015 stating that the machine was certified accurate. And this supports the machine was tested regularly, remotely or automatically. Like the May 1st scheduled certification document which is attached to the verified certification, the certification check document, these are the labels attached to them, for June 5th, 2015, also states the word systems check passed. The breathalyzer log for June 5th certification of the breathalyzer stamp certified accurate. Therefore, the phrase system check passed can only be reasonably interpreted to mean that the breathalyzer was certified accurate. Consequently, the machine was certified accurate on May 1st and on June 5th because it contained those same notation that the system check passed. And also both the May 1st and June 5th documents contain the phrase test status success. And as reply brief defendant asserts that the people want this court to conclude that the word success is synonymous with accurate, that that is not accurate. The word success used on the certification documents follows the phrase test status. And this clearly shows that the test of the breathalyzer itself was successful and that there was no malfunction or error in the process of the actual testing. Thus the record shows that the breathalyzer was checked twice within the 62-day period and it was certified accurate on May 10th, 2015, the day the defendant was tested. Okay. Saying the test was successful, you're not saying that we can conclude that it was therefore accurate. Yes, I am, Your Honor. Really? Based on the word system check passed on both the May 1st and the June 5th documentation, you know, we've got the scheduled certification and the, I'm sorry, what the certification check, those two labels attached to these different documents. But they both contain the word system check passed. And the June 5th additionally has in the log book that it was certified accurate on June 5th. So those words system check passed can only be reasonably interpreted to say that the machine was certified accurate through the remote testing on May 1st. Okay. Where do we have the language certified accurate? When was it actually created? I believe that's in the administrative code off the top of my head. Oh, it's not? So we don't have that description attached to this machine, right? No, no, Your Honor. Okay. It could be in the machine's memory somewhere that it would say. But the log book itself is where the actual, if someone physically goes to the machine and tests it on site. The word certified accurate is a requirement under the administrative code, right? As I understand, as I recall. But right now we're looking at a specific machine that was used in the administration of a blood alcohol test. Yes. But we're trying to find the compliance with being certified accurate, right? That it had to be a certified accurate machine. That's correct. And you're saying we can conclude that it was a certified accurate machine based upon the words I performed a successful test? System test passed. System check rather passed. A system check passed. Well, we extrapolate based on the log where that corresponds to the same language on the June 5th documentation. And then in the log, he typed, or he had a stamp that said certified accurate. I'm just thinking logically that I can successfully test coal samples for BTU content, which used to be done at the mines all the time. Correct. Okay. But I'm not sure that that includes that the number I get for BTU content of that coal is actually accurate. Well, under the Smith case that the defendant spoke about, the court reiterated that the people are not required to present evidence showing the actual accuracy of the test results to meet the foundational requirement, machines tested for accuracy met the standard. People only have to show that the breathalyzer was certified as accurate during the relevant period and the breathalyzer did not exhibit any malfunctions. So they don't have to give the exact numbers that correspond to the standards. They only have to say on various documentations that it passed the exam or it was certified exact. And that's what we have in this case. As far as I understand, both on May 1st and June 5th, there are two things. It says the system check passed and then there was a nominal test success, status success. That's correct, Your Honor. So it contained both of these? Yeah, both of those things in the machine. One talks about the test success and one talks... Both on May 1st and June 5th. Both of them, yes, Your Honor. Okay. Yes. Your Honor, do you have any other questions for me? I ask this Court to find the trial judge who did not abuse his discretion when admitting this evidence into the evidence. I'll ask a question. I'm interested to see the issues before this Court, whether it was allowed to be admitted for either an abuse of discretion or however we want to review this issue on the admissibility. Or is it that the evidence, even though admitted, is not enough to support the element required for the conviction? It's the second, Your Honor, is that the Smith Court didn't even... The business record exception was brought up also as an argument in the Smith Court. And the Court didn't even reach that because they said the documents, even if admitted, does not answer the question of... So what does the foundation leave to ultimately admit the breath test? And to your point... I don't think Smith had the kind of statement that was accurate or successful. They just have wrong data in Smith. It's unclear exactly what the documents say in the Smith Court. They don't go into the great detail of what those documents are, but they do... They just refer to it as wrong data. Correct. Wrong data with no interpretation. Not some kind of, say, test pass, successful. They don't talk about anything like that. No. So it's unknown whether or not that similar language existed in those documents as it did here. It does not specifically break down what those documents... And I would suspect through languages that they appeared to think it was just a mess of numbers. And I'd argue that this is a mess of numbers and letters as well. Yes, there's words, pass, success, check. But to Justice Holder's point about coal, my mom was a laboratory technician at a copper factory, so she tested giant coils of copper to make sure that it met the requirements of the customer. You don't just do one test and say, well, I mean, there's all different types of chemical tests they would have to do to make sure it met the specific specifications, a whole series of tests. And the problem here is the documents itself don't say that this is the final test, one in a series of tests, or really what any of that documentation means. And to the remote test point, the concern that, obviously, the defense counsel had at the trial, although she didn't specifically object, but she well preserved this argument, is I don't know what a remote test is. I don't know what that means. What counsel said here today about machines testing themselves on their own, I don't know if machines are capable of that either. And it surely was not presented at the trial court that the machine was capable of self-testing or receiving a remote test or how a remote test is even performed. We don't have what we have. We don't have other things. But I guess one of the issues before us is how draconian does the test have to be, right? Rather than, to me, it's whether or not what was presented was a sufficient update. Correct. Yes. On what was done at some stage. Yes. Period, right? Yes. Yes. Let's take the May 1st test that's not in the law book. We are looking at the business record rule. In part. And then the April 3 rule. In part, yes. If you want to reach whether or not those documents in and of themselves are admissible, but I still don't think it answers the ultimate. Even if this court concludes, yes, these documents are admissible to be, I guess, reviewed by the court, it doesn't answer the ultimate question of was the machine working properly on May 10th, 2015 First, was there a proper foundation so that they were admissible? And then once they were admissible, did they give us enough information to say that the machine was certified? Correct. Yes, sir. Yes. That's our position on that. But you have to admit that these facts are a little bit different than Smith. In as much as Smith doesn't go into, they just say, well, it's just a jumble, basically a jumble. And they don't say this, but it's a jumble of numbers. The phrase they use is raw data with no interpretation. But it is unclear in the facts of that case what those documents. They could have been the exact same packet of information. I don't know. They could have been something different. I'm not sure. It's unclear from the facts of that case what exactly the documents consisted of that the court was considering. They just say that it wasn't certified in this case. I mean, in that case. Correct. In that case, there was not established that within the 62-day time period that it was established. I mean, they could have been, with all due respect to that court, they could have been a little bit more clear. It would have been helpful, Your Honor, yes. Again, Mr. Crump on May 10th submitted a breath test. And what the status shows, is that machine working properly? And what we believe is it has to be more than a couple documents on dates that are within 62 days to say success. There has to be some interpretation of that data. There has to be, in the least, a report that's more detailed. If a remote test exists as a test that can be done, and that is what actually occurred here, then it has to say what is a remote test. There was a remote test. Why it did not end up in the logbook. All of that information should have been included in the documentation from the state police. See, and that's what, it's one of the questions I have. It appears that, Your Honor, you're asking that for any, in any of these cases, there actually should be some expert testifying here. I'm not going as far as to say that there actually, I think the best course would be to bring in the person that actually did the accuracy test. I'm not saying that. Is that required? I'm not saying that that's required. I'm saying that the documents here were not sufficient. Whether or not a, I think that arguably a more detailed set of documents, business records, whatever you want to define them as, that has an interpretation of that data. So you're saying that the documentation, even if it's omitted, has to contain a certain phrase in the normal course of a test within the document? I don't think it needs to have necessarily specific wording, but I think it has to have, as the Smith court said, an interpretation of the data that's submitted. So what does that mean? The interpretation means that there can be some statement. What tests were done, when they were done, what the results of those tests in clear and specific language. Not that we have to make inferences what different letters and numbers mean. What does status check mean? What does pass mean? How many tests were done? Was this one in a series of tests or the final test? I think there has to be a further explanation in the documents. So what you're saying, a statement that the test, these tests were performed, these were the results of the test, and that would be sufficient? Or do you have to go and say the results of the test lead the test administrator or whatever, however these tests were done, to conclude that this machine accurately will determine blood alcohol concentration? I think there has to be, in the documentation itself, an interpretation of the data of whatever tests were done. What I just said, would that be satisfying an interpretation requirement? I believe it would be sufficient to say that if there was a certification of what tests were specifically performed and what was the ultimate conclusion of those tests to show the machine was certified accurate in language that's understandable. This was a bench trial. In a jury trial setting, although it's a foundation question for the court. But again, the May 10th test that Mr. Crump submitted to you had similar language on it in terms of letters and numbers and test status passed. So I think it's important that the documentation submitted has an interpretation of the data from the test and what we're arguing here is that. And what does the interpretation go to? I mean, not go to, I mean, come back to the point that, you know, the interpretation has to be a conclusion, right? Correct. And a conclusion. And what would be the substance of a conclusion that would satisfy, you think, the law of administrative code? That on whatever date the test is done, that the machine was certified as accurate and working properly. And that language does not exist in the documentation itself that was submitted by the state police. Thank you, Your Honor. The court will take this matter under advisement. Thank you for your arguments and now we'll take a break for panel discussion.